Whitakee, Judge,
delivered the opinion of the court:
On February 27, 1909, Congress passed an Act (c. 224, 35 Stat. 658), providing for the leasing of lands in the Panama Canal Zone on condition that all leases “shall be made subject to the provision that if at anytime it shall become necessary, notwithstanding, for the United States to occupy or use any portion of the leased lands, it shall have the right to so do without further compensation to the lessee than for the reasonable value of the necessary improvements made upon his tracts by the lessee, the same to be determined by the courts of the Canal Zone.”
On March 21,1923, there was leased to plaintiff 8% hectares of land in the Canal Zone under a so-called license containing the provision required by the foregoing Act, except that it said that the value of the improvements were “to be determined in such manner as the Governor of the Panama Canal may direct.”
For the improvements on the land at the time the lease was executed the plaintiff paid the Panama Canal the sum of $4,400. He occupied the premises until November 30, *478 1939, when Ms lease was cancelled. As the result of appraisals made of the improvements on the tract the Governor fixed, a value for them of $818.00, and this sum was tendered to plaintiff, but he refused to accept it. He brings tMs suit to recover their reasonable value.
The parties agree that the determination of the Governor is final unless arbitrary or palpably erroneous, but we do not think this is true, since he was not the agency fixed by the Act to determine the value. See our former opinion in tMs case reported in 100 C. Cls. 289.
The parties disagree as to the basis for the determination of the reasonable value. The plaintiff says it is the cost of reproduction, less depreciation, and all of his testimony as to value is based upon this premise. We think this is the wrong premise. We think the Act contemplated reimbursing a lessee for all expenditures made by him in the making of improvements, less depreciation. The intent of Congress was to save a lessee from harm from the cancellation of his lease. It was intended only that he be reimbursed for out-of-pocket expenditures. Especially is this true in a case where the evidence shows, as in this case, that the lessee had abandoned the business for which the buildings were built and had no intention of operating the business elsewhere.
Plaintiff paid $4,400 for the improvements on the land at the time he took the lease and he spent a small amount of money in making additional improvements. The principal controversy is over the reasonable value of the improvements on the land when the lease was entered into.
The improvements on the land when it was leased were buildings for a chicken farm. They consisted of a primary brooder house, two secondary brooder houses, an incubator house, a bam, twelve laying houses, and five colony houses. They were built in 1917 and 1918 or earlier. At the time of the cancellation of the lease five of them had worn completely out and had been torn down; five still stood, but all of them were infested with termites and were on the verge of collapsing, except a colony house known as building No. 40. There was some value left in this building, but very little.
The Board of Appraisal, consisting of four men appointed by the Governor, found that on the basis of the original cost *479 of this house, figuring depreciation at 4 percent, it had a remaining value at the time of the cancellation of the lease of $135.36. Upon the basis of the amount paid for this building by Mr. Hele they found it had a value of $22.91. The Board found that the water pipes and faucets installed by Mr. Hele had a remaining value of $30.00, and two sanitary toilets installed by him had a remaining value of $25.00. On the basis of original cost the Board found that the value of all the improvements, with the exception of some trees planted on the property by Mr. Hele, had a value of $190.36, and on the basis of the price paid for the improvements by Mr. Hele they had a value of $77.91. It is agreed that the trees had a value of $134.00. Adding this to the Board’s figure of $190.36 would make a total value of all the improvements $324.36.
We are of opinion that the above finding of the Board was correct, except as hereinafter pointed out.
The testimony shows that these buildings were depreciated on the books of the Panama Canal Zone at 10 percent, but the report of the Board of Appraisal states that they possibly might have lasted as long as 25 years had they received average maintenance, but that it was evident that they had not received such maintenance, and in view thereof it was of the opinion that 20 years should be considered as the maximum life for the purpose of fixing depreciation. The plaintiff purchased them when they were not less than 5 years old, which would give them a remaining life on this basis of 15 years. The plaintiff occupied the premises and used the buildings for a period of approximately 17 years, so that theoretically, at least, their useful life would have been exhausted by the time the lease was cancelled. In fact, the condition of all the buildings, except one, was such at the time of the cancellation of the lease that they had no further useful value. They were all about to fall down, with the sole exception of building No. 40, above referred to. Indeed, one of them did fall down a few months after the lease was cancelled.
It, however, appears that plaintiff had put some galvanized iron on the roofs of some of the buildings and on the sides of some of them. This was found by the Office En *480 gineer to have had a knock-down value of $460.00, and he found that other parts of the buildings had a knock-down value of about $258.00, making a total value of the useable materials in the buildings of $718.00. Plaintiff was entitled to get for the improvements on the place the maximum sum he could realize in any way, either by selling the buildings in place or by tearing them down and selling the materials in them. We, therefore, think he is entitled to be paid this value of $718.00. To this must be added the value of the trees put on the place, which it is agreed was $134.00, and the value of the sprinkler system, $30.00, and the sanitary toilets, $25.00, making a total of $907.00. This amount the plaintiff is entitled to recover.
On this method of valuation it is obvious that nothing can be allowed for the concrete since it, of course, could not have been removed and sold. It had no value in place except to one desiring to erect a new building on it, and no one did. The chicken farm had been abandoned by plaintiff before the cancellation because unprofitable and no one wanted to start another one.
Judgment will be entered in favor of plaintiff for the sum of $907.00. It is so ordered.
Madden, Judge; Littleton, Judge; and Whaley, Chief JicS'tice, concur.
Jones, Judge, took no part in the decision of this case.